# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-718


**STATE OF LOUISIANA**

**VERSUS**

**VINCENT JERMAINE FORD**


**********

APPLICATION FOR SUPERVISORY WRIT FROM
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 21-CR-081527
HONORABLE CRAIG O. MARCOTTE, DISTRICT JUDGE

**********

**VAN H. KYZAR
JUDGE**

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and Guy E. Bradberry, Judges.


**WRIT GRANTED. RELIEF DENIED.**

**J. Dhu Thompson**
**C. Bryce Kinley**
**Law Office of J. Dhu Thompson (A Professional Law Corporation)**
**7607 Fern Avenue, Suite 402**
**Shreveport, LA 71105**
**(318) 670-8018**
**COUNSEL FOR DEFENDANT/RELATOR:**
    **Vincent Jermaine Ford**

**Don M. Burkett**
**District Attorney**
**Eleventh Judicial District**
**P. O. Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**COUNSEL FOR RESPONDANT:**
    **State of Louisiana**

**KYZAR, Judge.**

Defendant, Vincent Jermaine Ford, seeks supervisory review of the trial court's denial of his motion to quash the indictment charging him with, among other felony charges, possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. Particularly, Defendant asserts that in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111 (2022), La.R.S. 14:95.1 is unconstitutional as applied to his circumstances, as the underlying felony forming the predicate for the gun charge was a non-violent, drug-related offense. For the reasons herein, we grant the writ, but deny relief.[1]

## FACTS AND PROCEDURAL HISTORY

Defendant was charged by bill of information with possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1; possession of a Schedule I controlled dangerous substance with the intent to distribute, in violation of La.R.S. 40:966(A), possession of a firearm while in possession of a controlled dangerous substance, in violation of La.R.S. 14:95(E), and possession of drug paraphernalia, in violation of La.R.S. 40:1023(C). These offenses are alleged to have occurred on or about January 29, 2021.

Defendant filed a motion to quash the indictment as to the charge of possession of a firearm by a convicted felon. In his motion to quash and in his writ application, Defendant contends that in *Bruen*, the Supreme Court changed the test

---

[1] We recognize the well-established rule that the denial of a writ typically has no legal effect, and because we rule on the merits of the issue raised by Defendant, we have exercised our supervisory jurisdiction, granting the writ application notwithstanding that our ruling results in the denial of relief. *State v. Brown*, 15-855 (La.App. 4 Cir. 10/21/15), 176 So.3d 761, *writ denied*, 15-2250 (La. 2/5/16), 186 So.3d 1167; *State v. Alexander*, 14-401 (La. 11/7/14), 152 So.3d 137 (per curiam).

for determining the constitutionality of a statute prohibiting the possession of a firearm.

At the November 20, 2023 hearing on the motion, the State introduced the bill of information and argued that the provision at issue has been held constitutional in the past and that *Bruen* did not declare unconstitutional any laws providing criminal consequences for convicted felons in possession of firearms. Defendant argued that the Supreme Court altered the test for determining the constitutionality of laws impinging on the Second Amendment right to keep and bear firearms, and the State cannot and did not meet its burden of showing its constitutionality as applied to Defendant pursuant to this analysis. At the conclusion of the hearing, the trial court denied Defendant's motion to quash as to the firearms possession charge.

**DISCUSSION**

The extent of the Second Amendment's declaration of the right of citizens to keep and bear arms has been scrutinized, analyzed, lionized, and even vilified for decades. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the protection of a free State, the right of the people to keep and bear Arms, shall not be infringed." This guaranteed right is applicable to the various states through the Fourteenth Amendment's Due Process Clause as are other rights reserved via the Bill of Rights. *Ramos v. Louisiana*, 590 U.S. __, 140 S.Ct. 1390 (2020); *Timbs v. Indiana*, 586 U.S. __, 139 S.Ct. 682 (2019). It is this right that is at the core of this dispute.

At the outset, we note a fundamental procedural issue in the proceedings below. In filing the motion to quash challenging the constitutionality of La.R.S, 14:95.1, Defendant failed to put the Attorney General for the State of Louisiana (AG) on notice so he could decide whether to intervene to further protect the interests of the State in upholding the integrity of its laws. That failure necessitated that we grant

2

a stay of the trial of this matter scheduled for November 27, 2023, which has further impeded our ability to decide the issues posited herein in an expeditious manner, as this court labors under an independent requirement to notify the AG by certified mail once an appellate action is lodged wherein the constitutionality of one or more of our laws is questioned. Louisiana Revised Statutes 13:4448 provides:

> Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.

We have now taken the appropriate action to notify the AG.

In several cases, appellate courts have found that a constitutional challenge was not properly before the court when the AG was not notified of the constitutional challenge in the district court. *See Huber v. Midkiff*, 02-664 (La. 2/7/03), 838 So.2d 771; *State v. Expunged Rec. No. 249,044*, 02-589 (La.App. 3 Cir. 12/11/02), 833 So.2d 553; and *State v. Broussard*, 18-616 (La.App. 1 Cir. 12/21/18), 268 So.3d 307. In those cases, some courts vacated the trial court's ruling and remanded for the AG to be given notice and an opportunity to be heard. Other courts simply remanded the case for further proceedings. However, in *State v. V.L.G.*, 11-634 (La.App. 3 Cir. 12/7/11) (unpublished opinion), this court opted to consider the constitutional challenge after notifying the AG. This court distinguished *Expunged Rec. No. 249,044*, stating that it involved a declaratory judgment, and distinguished *Huber*, stating that it involved a ruling by the trial court that the statute was unconstitutional. *Id.* Considering that the statute in *V.L.G.* had been ruled constitutional in the trial court, this court found no prejudice to the AG, and thus the State's interest, and proceeded to decide the issue on the merits.

3

Like *V.L.G.*, the trial court in the present case found that the statute was constitutional. Thus, the AG's interests, i.e. the State's interests, were not harmed by the trial court's ruling. Further, considering that the AG has now been notified and has chosen not to respond, we opt to decide the issue on the merits.

The latest test of the depth and breadth of the right to bear arms came in *Bruen,* 597 U.S. 1, 142 S.Ct. 2111. Therein, the Supreme Court held, consistent with *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010), "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122. The Court stated:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (citation omitted).

The Supreme Court, in identifying the evidence the government could use to show that a regulation is consistent with the historical tradition of firearm regulation, stated:

> To be sure, "[h]istorical analysis can be difficult; it sometimes requires resolving threshold questions, and making nuanced judgments about which evidence to consult and how to interpret it." *McDonald*, 561 U.S. at 803–804, 130 S.Ct. 3020 (Scalia, J., concurring). But reliance on history to inform the meaning of constitutional text—especially text meant to codify a *pre-existing* right—is, in our view, more legitimate, and more administrable, than asking judges to "make difficult empirical judgments" about "the costs and benefits of firearms restrictions," especially given their "lack [of] expertise" in the field. *Id.*, at 790–791, 130 S.Ct. 3020 (plurality opinion).

*Id.* at 2130 (alterations in original).

4

The Court further stated:

> The dissent claims that *Heller*'s text-and-history test will prove unworkable compared to means-end scrutiny in part because judges are relatively ill equipped to "resolv[e] difficult historical questions" or engage in "searching historical surveys." *Post*, at 2177, 2179. We are unpersuaded. The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies. That "legal inquiry is a refined subset" of a broader "historical inquiry," and it relies on "various evidentiary principles and default rules" to resolve uncertainties. W. Baude & S. Sachs, Originalism and the Law of the Past, 37 L. & Hist. Rev. 809, 810–811 (2019). For example, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020). Courts are thus entitled to decide a case based on the historical record compiled by the parties.

*Id.* at n.6 (alterations in original).

We agree with the State that the Supreme Court's holding in *Bruen* does not, in general, declare unconstitutional laws making it unlawful for convicted felons to own or possess firearms, and this includes, in particular, La.R.S. 14:95.1. The opinion explicitly states as much:

> To be clear, analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." *Drummond v. Robinson*, 9 F.4th 217, 226 (CA3 2021). On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

> Consider, for example, *Heller*'s discussion of "longstanding" "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. at 626, 128 S.Ct. 2783. Although the historical record yields relatively few 18th- and 19th-century "sensitive places" where weapons were altogether prohibited— *e.g.,* legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions. See D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018); see also Brief for Independent Institute as *Amicus Curiae* 11–17. We therefore can assume it settled that these locations were "sensitive places" where

arms carrying could be prohibited consistent with the Second Amendment. And courts can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible.

*Id.* at 2133.

The Court itself in *Bruen* further cited some of the historical examples where the government was justified in prohibiting certain persons, including felons, from possessing or owning firearms, "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2129–30.

> [E]ven during Reconstruction the right to keep and bear arms had limits. But those limits were consistent with a right of the public to peaceably carry handguns for self-defense. For instance, when General D. E. Sickles issued a decree in 1866 pre-empting South Carolina's Black Codes—which prohibited firearm possession by blacks—he stated: "The constitutional rights of all loyal and well-disposed inhabitants to bear arms will not be infringed; nevertheless this shall not be construed to sanction the unlawful practice of carrying concealed weapons.... And **no disorderly person, vagrant, or disturber of the peace, shall be allowed to bear arms**." Cong. Globe, 39th Cong., 1st Sess., at 908–909; see also *McDonald*, 561 U.S. at 847–848, 130 S.Ct. 3020 (opinion of THOMAS, J.).

*Id.* at 2152 (emphasis added).

The concurring opinion of Justice Kavanaugh, joined in by Chief Justice Roberts, makes this point very clear:

> Properly interpreted, the Second Amendment allows a "variety" of gun regulations. *Heller*, 554 U.S. at 636, 128 S.Ct. 2783. As Justice Scalia wrote in his opinion for the Court in *Heller*, and Justice ALITO reiterated in relevant part in the principal opinion in *McDonald*:
>
>> "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.... [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial

6

> sale of arms. [Footnote 26: We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.]

*Id.* at 2162 (alterations in original).

In addition, the concurring opinion of Justice Alito drives this point home without doubt or indecision:

> Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns.

*Id.* at 2157.

In *United States v. Collette*, 630 F.Supp.3d 841, 851 (W.D. Tex. 2022) (footnote omitted) (alteration in original), the U.S. District Court for the Western District of Texas denied a motion to dismiss as unconstitutional a similar charge of possession of a firearm by a convicted felon under federal law:

> A free society has the right to punish but "prefers to punish the few who abuse rights of [the people] after they break the law than to throttle them and all others beforehand." Felons are those who have abused the rights of the people. And as outlined above, this Nation has a "longstanding" tradition of exercising its right—as a free society—to exclude from "the people" those who squander their rights for crimes and violence. Consistent with *Heller* and *Bruen*, the Second Amendment should be no different here. As a result, the Court holds that § 922(g)(1) is constitutional on its face and as applied to this Defendant. Defendant's Motion to Dismiss Indictment is accordingly **DENIED**.

Therein, the court found analogous other provisions limiting the constitutional rights of certain groups, including convicted felons, noting that "it has been historically constitutional to exclude" the right to vote guaranteed to "'the people' under Section 2, Article I" to persons convicted of felonies and that the Supreme Court has excluded certain groups from the "the people's right of assembly[]" as guaranteed by the First Amendment's Assembly-and-Petition clause. *Id.* at 849. The

court stated, "*Bruen* did shake up the legal landscape. And the Court believes that faithfully following *Bruen*'s new framework casts doubt on some firearm regulations. But the regulation in this case is not one of them." *Id.* at 842.

In *United States v. Carrero*, 635 F.Supp.3d 1210, 1213 (D. Utah 2022) (citations omitted), the U.S. District Court for the District of Utah likewise found that *Bruen* did not declare unconstitutional the federal prohibition on certain felons to possess firearms:

> This court is not alone in finding that felon-in-possession regulations survive <u>Bruen</u>. Federal courts inside and outside the Tenth Circuit have assessed the facial constitutionality of Section 922(g)(1) under <u>Bruen</u>'s framework. As far as this court can find, every federal court that has assessed the facial constitutionality of Section 922(g)(1) in the wake of the <u>Bruen</u> decision has held that Section 922(g)(1) is constitutional on its face.

*See also United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023); *United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023).

We also agree with this rationale and find it applicable to the issue of the constitutionality of La.R.S. 14:95.1, as applied to Defendant herein.

Defendant cites *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), to support his position that La.R.S. 14:95.1 is unconstitutional as applied to his circumstances as a prior convicted felon for a drug-related offense. Given our analysis above, we find the argument unpersuasive and that *Daniels* is inapplicable to the prohibition of the right of certain felons to own or possess firearms. *Daniels* did not involve a convicted felon, rather it dealt with a law prohibiting an "'unlawful user'" of drugs from possessing a firearm. In that matter, the court stated, "Title 18 U.S.C. § 922(g)(3) bars an individual from possessing a firearm if he is an "unlawful user" of a controlled substance. Patrick Daniels is one such "'unlawful user'—he admitted to smoking marihuana [sic] multiple days per month." *Id.* at 339.

Considering the stated limitations of the Supreme Court's opinion in *Bruen*, with the historical examples cited therein, and other legal resources reflecting analogous restrictions readily accessible to the courts through jurisprudence supporting reasonable restrictions for certain persons, including felons, to possess firearms, we find no error in the decision of the trial court denying Defendant's motion to quash.

**WRIT GRANTED. RELIEF DENIED:** We grant the writ, but deny relief, finding no error in the decision of the trial court denying Defendant's motion to quash.